# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IVAN SHANE STORZ, *Trustee of the* *I. Shane Storz Trust*, et al., <br><br>  Plaintiffs, <br> v. <br><br> SOUTHERN AIRWAYS CORP., <br><br>  Defendant. | ) ) ) ) ) ) ) ) ) ) ) |

Case No. 4:23-cv-01496-SEP

## MEMORANDUM AND ORDER

Before the Court is Southern Airways Corporation's Motion to Compel Arbitration and to Dismiss, Doc. [15]. For the reasons set forth below, the motion is granted in part.

### FACTS AND BACKGROUND

Plaintiffs Ivan Shane Storz, Darlene Storz, and S. Darnea Wood are the former shareholders of Multi-Aero Inc., a regional commuter airline based in St. Louis, Missouri. *See* Doc. [1] ¶ 6. On March 31, 2022, they entered into the Stock Purchase Agreement (SPA) with Defendant Southern Airways Corporation (SAC)—a larger commuter airline—under which SAC purchased all of Plaintiffs' stock in Multi-Aero. *See* Doc. [1-1]. The SPA "contains a binding arbitration provision" that requires the parties to the SPA to resolve "[a]ny disputes, claims, or controversies between the Parties including, but not limited to, those arising out of or related to [the SPA]." *Id*. ¶¶ 12.1.2, 12.3. Several disputes arose in the months after the acquisition. To resolve them, Plaintiffs, SAC, Multi-Aero, and a company called JTA Leasing and Sales entered into the Mutual Resolution and Release (MRR). The MRR purported to "resolve and release, except as expressly provided herein, all rights, claims, demands, disputes, and alleged claims arising out of issues among the Parties upon the terms set forth hereinbelow." Doc. [1-2] at 1. The MRR does not include an arbitration provision.

In November 2023, Plaintiffs filed this suit against SAC for breach of contract, unjust enrichment, and specific performance. *See* Doc. [1]. Plaintiffs allege that SAC "breached its agreements with Plaintiffs by failing to pay certain monies due to Plaintiffs and by failing to perform other material obligations to Plaintiffs provided for in the Stock Purchase Agreement and the Mutual Resolution and Release." *Id*. ¶ 12. Plaintiffs also allege that SAC has been

unjustly enriched by "its intentional acts and material breaches of its agreements with Plaintiffs," and asks for "specific performance" through a court order directing the release of $800,000 currently being held in escrow. *Id.* ¶¶ 18, 23. SAC now moves to compel Plaintiffs to submit this dispute to arbitration based on the SPA's arbitration provision. *See* Doc. [15].

## LEGAL STANDARD

"Arbitration agreements are governed by the Federal Arbitration Act ('FAA')." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). The FAA mandates broad enforcement of arbitration provisions:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The FAA establishes a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.* But a "matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)). "While 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,] . . . a party who has not agreed to arbitrate a dispute cannot be forced to do so.'" *Id.* (alteration and omission in original) (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)).

Before compelling arbitration, a district court must determine: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that

agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). "Because 'arbitration is a matter of contract,' whether an arbitration provision is valid is a matter of state contract law . . . ." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *Concepcion*, 563 U.S. at 339). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Id*. at 968 (citing *Faber*, 367 F.3d at 1052).

The Eighth Circuit has instructed that a motion to compel arbitration should be "analyzed under a standard akin to [a motion for] summary judgment." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014). Accordingly, the Court must view the evidence in the light most favorable to the non-moving party, resolving all factual disputes in its favor. *Id.* at 743. The Court may not compel arbitration where any genuine issue of material fact remains as to whether a valid arbitration agreement exists. *Id.*

## DISCUSSION

All of Plaintiffs' claims fall within the SPA's arbitration provision, and Plaintiffs' arguments to the contrary fail. The SPA requires the parties to arbitrate "[a]ny disputes, claims, or controversies between the Parties including, but not limited to, those arising out of or related to [the SPA]." Doc. [1-1] ¶ 12.1.2. And the arbitration requirement "survive[s] the termination, expiration, or rescission of [the SPA]." *Id*. Plaintiffs and SAC are parties to the SPA. *See id*. at 1, ¶ 4.1. And the Complaint's three counts arise from or relate to the SPA. In Count I, Plaintiffs allege that SAC "breached its *agreements*," and failed to "perform other material obligations to Plaintiffs provided for *in the Stock Purchase Agreement and the Mutual Resolution and Release*." Doc. [1] ¶ 12 (emphasis added). In Count II, Plaintiffs allege that SAC was unjustly enriched by its "breaches of its *agreements*," i.e., the SPA and MRR. *Id*. ¶ 18 (emphasis added). And in Count III, Plaintiffs incorporate the allegations in Counts I and II and ask for "specific performance" in the form of an order to release $800,000 held in escrow. *Id*. ¶¶ 19-23. Both the SPA and MRR provide that funds will be held in escrow. *See* Doc. [1-1] ¶ 4.4; Doc. [1-2] ¶ 14. And the MRR's "Release of Escrow Funds" provision repeatedly references the SPA. *See* Doc. [1-2] ¶ 14 ("SAC hereby authorizes the release of $200,000 held in escrow pursuant to the SPA . . . ." Each of Plaintiffs' claims, therefore, "aris[es] out of or [is] related to" the SPA. Doc. [1-1] ¶ 12.1.2.

3

Plaintiffs argue that there is no valid arbitration agreement because the MRR "expressly revoked and superseded the previous Stock Purchase Agreement (SPA) and its arbitration provision." Doc. [24] at 4. Plaintiffs precluded that argument by bringing their claims under the SPA. They cannot seek relief for SAC's alleged breach of the SPA and at the same time claim that the MRR "expressly superseded, revoked and released all of the parties from all of their obligations under the prior SPA" to avoid arbitration. Doc. [24] at 9.

Leaving aside the internal inconsistency of Plaintiffs' position, the arbitration clause is valid. Both the SPA and the MRR are governed by New York Law. *See* Doc. [1-1] ¶ 12.2; Doc. [1-2] ¶ 24. In New York, "[w]hen the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement." *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 809 (S.D.N.Y. 2008) (alteration in original) (quoting *Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir. 1990)). But "a subsequent contract not pertaining to 'precisely the same subject matter' will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *Id.* (quoting *CreditSights, Inc. v. Ciasullo*, 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007)). To determine whether a provision has been superseded, courts "consider whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded, whether the two provisions have the same general purpose or address the same general rights, and whether the two provisions can coexist or work in tandem." *Id*.

Under New York law, the MRR did not supersede the SPA's arbitration requirement. First, the SPA and MRR do not pertain to precisely the same subject matter. The parties to the SPA are a subset of the parties to the MRR. *Compare* Doc. [1-1] at 33-24, *with* Doc. [1-2] at 10-12. The MRR addresses, in addition to the SPA, the "Employment Agreement dated March 31, 2022, by and between I. Shane Storz and SAC," the "Independent Contractor Agreement dated March 31, 2022" between S. Darnea Wood and SAC, and a new agreement for JTA to sell four Cessna aircraft to SAC. *See* Doc. [1-2] ¶¶ 1, 5, 22. Most importantly, the MRR does not "precisely" deal with arbitration. As discussed in more detail below, the MRR includes a governing law clause and sets the place of performance, but it does not mention the SPA's arbitration provision or otherwise set out how disputes should be resolved.

4

Second, the MRR's merger clause does not "explicitly indicate" that the arbitration provision is superseded. *Medtech Prod. Inc.*, 596 F. Supp. 2d at 809. The MRR does, however, explicitly "terminate" the Independent Contractor Agreement, Doc. [1-2] ¶ 5, and release Plaintiffs I. Shane Storz and Darnea Wood from their non-competes. *Id*. ¶ 6. The fact that the MRR explicitly supersedes one contract but lacks similar language for the SPA or its arbitration provision suggests that the MRR did not supersede the SPA's arbitration provision. The MRR's repeated references to the SPA also imply that it did not purport to revoke the SPA. Paragraph 8, for example, states "SAC and Shareholders hereby agree and *ratify the SPA* agreement non-disparaging provisions." *Id*. ¶ 8 (emphasis added). And multiple paragraphs refer to the SPA and state that actions are taken "pursuant to" the SPA. *See, e.g.*, *id.* ¶¶ 9, 12, 14. Those provisions contradict Plaintiffs' characterizations of the MRR as a "novation respecting all of the terms in the prior SPA" and "a new, separate and distinct contract which modified, supplanted, superseded and/or revoked the previous SPA in its entirety." Doc. [24] at 6.

Last, nothing in the MRR has the "same general purpose or address[es] the same general rights," as the arbitration provision, and the MRR and SPA "can coexist or work in tandem" with respect to dispute resolution. *Medtech Prod. Inc.*, 596 F. Supp. 2d at 810. Plaintiffs argue that the SPA's requirement to arbitrate in Atlanta, Georgia, is "directly at odds" with the MRR's "Governing Law" provision requiring the MRR to be "performed within the jurisdiction and venue of St. Louis County State of Missouri." Doc. [24] at 11-12. Plaintiffs argue that when "a later contract providing for litigation supersedes an earlier prior contract providing for arbitration, . . . there is no arbitration agreement to be enforced." *Id*. at 9. But the "Governing Law" clause does not actually require the parties to litigate disputes under the MRR in any court; rather, it sets the place of performance in St. Louis. *See* Doc. [1-2] ¶ 24. The cases Plaintiffs rely on did involve contracts that required the parties to litigate disputes in court, and they are therefore inapposite. *See Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1191 (2024) (second contract "contained a forum selection clause" providing that "California courts (state and federal) shall have sole jurisdiction of any controversies"); *Field Intel. Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351, 354 (3d Cir. 2022) ("[T]he 2017 contract contained no arbitration provision, instead requiring any 'action under or concerning' that contract to be litigated in a state or federal court in New Jersey."); *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 481 (Tex. 2022) ("[T]he parties agreed that the state courts of Harris County and the federal district court

for the Southern District of Texas, Houston Division, would be 'the exclusive forums for any dispute arising out of or related to this Settlement Agreement.'"). Because the MRR is silent on how the parties must resolve future disputes, it can coexist with the SPA's arbitration provision.[1]

Because all of Plaintiffs claims are subject to the SPA's valid arbitration clause, the Court must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. This action is therefore stayed "until such arbitration has been had in accordance with the terms of the agreement." *Id*. § 3.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and to Dismiss, Doc. [15], is **GRANTED IN PART**. The motion to compel arbitration is **GRANTED** and the case is **STAYED** pending arbitration.

**IT IS FURTHER ORDERED** that the parties must provide a joint status report regarding the progress of arbitration proceedings no later than October 4, 2024, and must also file a notice updating the Court no later than 10 days following the conclusion of arbitration proceedings.

**IT IS FINALLY ORDERED** that Defendant's Motion to Strike, Doc. [39], is **DENIED as moot**.

Dated this 5th day of August, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiffs' brief cites to the Ninth Circuit's decision in *Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022). After the Supreme Court affirmed the Ninth Circuit's decision, Plaintiffs filed a "Request for Ruling on Defendant's Motion to Compel Arbitration and to Dismiss Post the United States Supreme Court's Ruling on *Coinbase Inc. v. Suski*," Doc. [38]. Plaintiffs argue that "the Supreme Courts' [sic] Ruling is dispositive in favor of Plaintiffs [sic] opposition to Defendants [sic] Motion." *Id*. at 1-2. The Supreme Court held that "where, as here, parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Coinbase*, 144 S. Ct. at 1194. As noted above, unlike the second contract in *Coinbase*, the MRR does not require the parties to litigate their disputes in court; therefore, the Supreme Court's decision does not vindicate Plaintiffs' argument here.